## GUERRELIMO HERNANDEZ v. THE STATE.

No. 13044.   Delivered February 26, 1930.
Reported in 25 S. W. (2d) 325.

The opinion states the case.

*T. F. Slack* of Pecos, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, confinement in the penitentiary for life.

This is a second appeal.  See Hernandez v. State, 8 S. W. (2d) 947.  In the opinion of the writer the case here rests upon very different grounds from those which appeared upon the former appeal.

On the other trial much damaging testimony to appellant appeared to have been obtained by the use of a dictaphone installed in the jail subsequent to the arrest of the accused.   In accordance with expressions in our former opinion this testimony was withheld upon this trial.

The evidence as to the admissibility of the written confession offered by the State, appears in a more satisfactory condition than before.   After the reversal of this case the venue was changed from Reeves county to Pecos county, and later by agreement of the at-

torneys for both sides, to Ward county where this trial was had before Hon. Charles L. Klapproth, the present Judge of the 109th district, Hon. J. A. Drane, being a witness used by the State to establish the predicate relied on for the admission of the confession referred to.

Drane and other witnesses testified that on the 11th of March, 1926, they were called to witness said confession; that appellant appeared to be cool, calm and collected, without excitement and without any appearance of undue influence, and that the confession was made after due warning, and gave every evidence of being voluntary, etc. Upon cross-examination of one witness it was developed that on the night of March 10th, some twelve or more hours preceding the making of the confession offered by the State, and above referred to, that appellant had been taken to the scene of the alleged homicide where a fire was built, and one of the men had on a sheet, etc. There was no testimony from said witness as to any threats, or offers of violence at that time to appellant. Later appellant took the stand and testified to the same things, and stated that he was not particularly frightened by what occurred at the scene of the homicide, but that he was scared to some extent, and he averred that when he made the next confession,—referring to the one introduced by the State,—that he was still afraid, and that he made it because he had already made another one.

The trial court fully instructed the jury that if the confession introduced in evidence by the State was obtained by the result of improper influences, or by threats, or as the result of fright produced by the words or the actions of any officer or officers, they should not consider same for any purpose. Apparently having in mind what was said by this court in its former opinion, the learned trial judge also told the jury that if they believed that appellant made any statements previous to the confession which had been introduced, which statements had been made as the result of fear of life or bodily harm, or because of threats made by the officers, or because of any action of said officers, and that at the time he made the confession introduced by the State he was influenced to make same by reason of having made a former improper statement or statements brought about by improper influences, and that said confession was induced by the fact that he had already made a coerced statement, and unless the jury believed beyond a reasonable doubt that such was not true, they should not consider either the previous statement referred to or the confession offered by the State. The charge of the court

was not excepted to in this regard or for any other reason. As far as we are able to determine the charges above referred to gave to appellant the benefit of every instruction to which he was entitled under the facts as developed upon this trial.

Reverting to the sufficiency of the testimony to corroborate the confession introduced by the State and to show that the deceased came to his death as the result of the criminal agency of appellant, or of appellant and others with whom he was acting, we note that in addition to the other testimony relating to this point, appellant himself offered in evidence, as appears from the statement of facts, the written statement made by him prior to the confession introduced by the State. This written statement is as follows:

"State of Texas, County of Reeves.

"My name is Grullermo Hernandez. My age is twenty-one and I live at Colorado, Texas. On or about Jan. 4, 1926, Jose Ulite drew a pistol on me and made me go with him and Benlava Chaves to rob Mr. Paddock. Benlava went into Paddock's house and hit him on the head and killed him. They robbed Mr. Paddock of $40.00 and two pistols and gave me $13.00. Benlava poured gasoline on Mr. Paddock and burned him. I came alone to Pecos and stayed the rest of the night with Bonafacio.

his mark

X

"Signed—Grullermo Hernandez.

"Witnesses: E. B. Kiser, T. G. Slack, Frank Joplin, Jr., Kenneth Slack, Roy S. Wilcox, G. A. Maley, Joe H. Glover, Louis Robinson, David Gosher."

The state proved by its witnesses again upon this trial that deceased was a strong, hearty, healthy man of large physique, and that he was running a grocery store in a story and a half frame house at a siding called Patrol ten miles from Pecos on the night of the 3rd of January, 1926; that he lived alone in his store and slept above it, and was reputed to keep considerable money in his safe, which was also occupied by his books and papers, and was kept in a part of the store downstairs and not under or near the place where deceased slept upon an iron bedstead upstairs. He was last seen alive, as far as this record goes, aside from the confession of appellant, about noon on the 3rd of January. He was well at that time. A neighbor of deceased testified that no fire at the place of deceased occurred before nine o'clock that night. The next morning it was ascertained that the building of deceased was

entirely consumed. His safe was found, the door being partially open, and all of the contents of the safe were gone. In front of the safe and near to it were discovered the remains of the body of a human being, the bones of the arms, legs, fingers, toes, skull, and a part of the left arm unconsumed, and a part of the torso inclosing the heart. These remains were identified as those of a human being, the physician examining them saying that they were the remains of a man, and also that the man was of large stature, and apparently a white man. By the side of the outline form of this body as revealed in the ashes the morning of this discovery, was found a large watch with peculiar markings and a blue dial which was identified as the watch worn ordinarily by deceased. The hands of this watch showed to have stopped at seven minutes after one o'clock, and the jeweler who examined same said that they were stopped by fire. A bunch of keys ordinarily carried by deceased was found lying by the body. Near the part indicating the head of the dead man was found a large hammer which, according to the testimony, ordinarily stayed at a forge some sixty feet from the door of the building out in the yard. Large military suspender buckles such as were worn by deceased were also found in this pile of ashes. In his confession introduced by the State appellant stated that he and two other Mexicans made it up to rob and if necessary murder deceased on the night of the 3rd of January, 1926; that they went together in the nighttime to the store; that it was dark as they approached the building; that they called to deceased who made a light and came to the door and asked what they wanted; that one of the party, Chaves, stated to deceased that they wanted to pay some accounts; that deceased turned and walked back in the store followed by Chaves; that in a few minutes he heard a lick and a cry from deceased; then another blow and a feebler cry from deceased, and then another blow and he heard deceased fall, and in a few minutes Chaves reappeared and told them that he had killed deceased by striking him, and that he had set fire to the place. The confession further states that as soon as the fire began to blaze the three of them went back down the road to a place where they divided the money Chaves had gotten, some forty dollars. Chaves also exhibited to appellant some pistols which he said he had gotten from deceased. Appellant's defense was an alibi, and he introduced several witnesses who testified that on the night of the big snow, which was shown to have occurred on the night of the 3rd of January, he was in Colorado City in Mitchell county quite a distance from Pecos. Appel-

lant took the witness stand and himself testified to this alibi. The State in rebuttal introduced a restaurant keeper who testified that on the night of the big snow he saw appellant in his restaurant at Pecos, and that appellant was spending money, buying coffee, pies, and dropping nickels into the player piano, etc.

The views of the writer of this opinion as to the law applicable here are fully set out in the former opinion. In Kugadt v. State, 38 Texas Crim. Rep. 694, Judge Hurt, speaking for the court says:

"Full proof of the body of the crime, the corpus delicti, independently of the confession, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient. 3 Am. and Eng. Enc. of Law, p. 447. We take it that there can be no question that the prosecution is permitted to prove by circumstantial evidence the corpus delicti, and in aid thereto use confession of the appellant."

The Kugadt case is regarded as one of the leading cases, and clearly sets forth a correct exposition of the law applicable to the instant case.

We regard the present trial as free from what were deemed by members of the court errors calling for a reversal upon the other trial, and are of opinion that in the present case the record does not show any such condition either upon its facts or upon the law questions arising, calling for reversal.

The judgment will be affirmed.

*Affirmed.*